154 T.C. No. 8

UNITED STATES TAX COURT

TIMOTHY J. LEWIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14911-17W.                    Filed April 8, 2020.

R determined P is entitled to a whistleblower award under I.R.C. sec. 7623.  P argues that R abused his discretion in the computation of his award by excluding reported, paid tax from the collected proceeds and by determining that there was no possibility of future proceeds relating to the deceased target taxpayer's estate.  P also argues that R abused his discretion by reducing his award pursuant to the budget sequester provisions of the Budget Control Act of 2011, Pub. L. No. 112-25, secs. 101-103, 125 Stat. at 241-246, as amended by the American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, sec. 901, 126 Stat. at 2370.

Held:  The amendments to I.R.C. sec. 7623 in the Bipartisan Budget Act of 2018, Pub. L. No. 115-123, sec. 41108(a), 132 Stat. at 158, apply to the determinations of the Whistleblower Office (WBO) until the whistleblower award can no longer be further challenged in court or elsewhere.

Held, further, reported, paid tax is not collected proceeds as defined in I.R.C. sec. 7623(c) irrespective of whether R audits the return for the year of the reported tax.

Held, further, there is no possibility of future proceeds from the target's estate as an estate tax return has been filed showing no tax due, which R has accepted as correct.

Held, further, I.R.C. sec. 7623(b)(4) confers on the Court jurisdiction to review the applicability of budget sequestration provisions to the payment of a mandatory whistleblower award.

Held, further, the WBO did not abuse its discretion when it determined that the sequestration provisions in effect for the year of payment would apply to P's whistleblower award.

Shine Lin and Thomas C. Pliske, for petitioner.

Joel D. McMahan and A. Gary Begun, for respondent.

OPINION

GOEKE, Judge:  In this whistleblower case petitioner seeks review of a

whistleblower award determination by the Whistleblower Office (WBO) of the

Internal Revenue Service (IRS) under section 7623(b)(4).[1]  The issues are:

---

[1]Unless otherwise stated all section references are to the Internal Revenue Code (Code) in effect at all relevant times.  Amounts are rounded to the nearest dollar.

(1) whether the WBO abused its discretion in its determination of the amount of the proceeds collected or the possibility for future collected proceeds from the whistleblower information petitioner provided; we hold it did not; and (2) whether the WBO abused its discretion by asserting that petitioner's whistleblower award may be reduced for automatic spending cuts applicable to certain Government payments (sequestration) in the year that the award is paid; we hold it did not.

## Background

Petitioner resided in Wisconsin when he timely filed the petition. He submitted Form 211, Application for Award for Original Information, dated July 18, 2011, to the WBO, which received it on August 15, 2011, alleging that a closely held corporation and its two married shareholders underpaid income tax for 2010 and prior years. The married shareholders each owned 50% of the corporation. Petitioner had been employed as a financial manager at the corporation from 1997 to April 2011, when the corporation terminated his employment. Many of petitioner's allegations related to tax years for which assessment is barred by the three-year statute of limitations under section 6501(a). On Form 211 petitioner asserted that there was evidence of fraud and that the section 6501(c)(1) fraud exception to the three-year statute of limitations may apply.

Petitioner's allegations involved transfers by the corporation to the shareholders' two sons. He alleged that the corporation had transferred over $15 million to one son (son No. 1) over 15 years and deducted the payments as wages on its corporate returns even though the son no longer worked for the corporation (wage issue). The son stopped working for the corporation in 1996. The corporation continued to pay son No. 1 over $500,000 per year and also gave him raises. The corporation also deducted employee benefits paid on son No. 1's behalf and expenses relating to his personal use of an automobile. Petitioner claimed that respondent should disallow the corporation's deductions for these amounts and treat them as constructive dividends to the shareholders and taxable gifts from the shareholders to son No. 1. For each year the corporation issued Form W-2, Wage and Tax Statement, to son No. 1, and son No. 1 reported the amount as income on his tax return. With respect to the second son (son No. 2), petitioner alleged that the corporation transferred approximately $15 million to him from 2008 through 2011 and improperly treated the transfers as loans. On his Form 211 petitioner alleged that the transfers were constructive dividends to the shareholders and taxable gifts from the shareholders to son No. 2.

On the basis of petitioner's Form 211, on or about March 1, 2012, respondent began an audit for the corporation's 2010 tax year and the

shareholders' 2010 and 2011 tax years. Respondent did not include the corporation's 2011 tax year in the audit because the corporation had not yet filed its 2011 corporate return, and it was not yet due. After receiving notice of the audit, the corporation filed a request for an extension for filing its 2011 return. Son No. 1 filed his 2011 individual return before the audit began and reported the Form W-2 amount as compensation. Respondent did not assert an adjustment to son No. 1's reporting.

In April 2012 a revenue agent met with representatives of the corporation and discussed the 2010 and 2011 tax years during this meeting and in the followup communications. The corporation provided son No. 1's 2011 Form W-2 to the revenue agent although the IRS had not requested any documents from the corporation for 2011. During the 2010 audit the IRS agreed not to assert an accuracy-related penalty against the corporation for 2011 with respect to any items adjusted for 2010. On the basis of these communications the corporation knew respondent's position on the wage issue before it filed its 2011 return. On September 7, 2012, the corporation filed its 2011 return and paid its tax. It did not deduct any wages, employee benefits, or automobile expenses for son No. 1. It deducted automobile expenses for two other family members, deductions which respondent disallowed.

The revenue agent completed Form 5701, Notice of Proposed Adjustment, dated December 17, 2012, for the corporation's 2010 and 2011 years, showing no adjustment for the 2011 wage deduction. On March 1, 2013, the corporation and the shareholders executed a closing agreement for 2010 and 2011. Under the closing agreement the parties agreed that the corporation's 2010 wage deduction of $524,881 for son No. 1 was disallowed. The corporation's payments to son No. 1 were not treated as dividends to the shareholders or as gifts from the shareholders to son No. 1 because son No. 1 reported them as income. The parties also agreed that the corporation was not entitled to deduct automobile expenses of $56,475 and $15,961 for 2010 and 2011, respectively, relating to son No. 1 and other family members. The parties agreed that the corporation's loans to son No. 2 of $1,856,000 and $1,705,000 during 2010 and 2011, respectively, were taxable dividends to the shareholders and then gifts to son No. 2. The parties also agreed that the shareholders and the corporation were liable for section 6662(a) accuracy-related penalties for 2010.

Shortly after the execution of the closing agreement, the shareholders filed gift tax returns for 2010 and 2011 reporting the loans to son No. 2 as gifts. They were not required to file gift tax returns as part of the closing agreement. They used $603,012 of their unified credits to offset the resulting gift tax. In June 2014

the husband died. No estate or gift tax was due on the filing of his estate tax return because the estate claimed his remaining unified credit and a marital deduction for a qualified terminable interest trust that provided a life estate to his wife and the remainder to his two sons. The trust documents provide that upon the wife's death the trustees shall pay the estate tax due before distributing the remaining assets to the trust beneficiaries. In 2015 the wife made gifts of over $11 million, used her remaining credit, and paid over $4.6 million in gift tax.

After the audit a revenue agent on the audit team completed Form 11369, Confidential Evaluation Report on Claim for Award, for the corporation's 2010 and 2011 tax years and submitted it to the WBO. The revenue agent opined that the corporation's change in reporting for the wage issue provides "additional award consideration". He wrote that the corporation would have continued to claim the wage deduction if not for the whistleblower information and computed that the wage deduction would have reduced the corporation's 2011 tax by $180,460. Form 11369 does not contain a computation of the collected proceeds.

In an internal memorandum a senior management analyst in the WBO recommended a 22% award. The analyst evaluated the positive and negative factors in section 301.7623-4(b), Proced. & Admin. Regs., for determining the percentage of the collected proceeds to award to a whistleblower (award

percentage) for section 7623(b) mandatory awards. He determined that petitioner's whistleblower information resulted in the collection of corporate tax of $249,896 and $5,872 and individual income tax of $407,324 and $346,054 for 2010 and 2011, respectively, for collected proceeds of $1,009,146.

By letter dated January 25, 2017, the WBO notified petitioner of its preliminary award recommendation of $206,693 (22% of collected proceeds of $1,009,146 less a 6.9% sequestration reduction). Respondent concedes that the letter incorrectly designated the award as discretionary under section 7623(a) and that petitioner qualifies for a mandatory award.[2] The parties agree that the incorrect designation as discretionary is harmless because the WBO applied the provisions of the Code and the regulations for determining a mandatory award.

With respect to the sequestration, the letter stated:

> The Budget Control Act of 2011, as amended by the American Tax Relief Act of 2012, requires that automatic reductions be made with respect to certain government payments. The required reduction percentage is determined annually by the Office of Management and Budget for the year in which payments are made. As a result, your preliminary recommended award reflects a reduction in accordance with the Office of Management and Budget guidance for the 2017 Fiscal Year reduction amount of 6.9%. The final award amount will use the reduction required in the year of payment.

---

[2]Respondent incorrectly determined the amount of proceeds in dispute for purposes of the $2 million threshold for mandatory awards. See sec. 7623(b)(5).

In the letter the WBO stated that there was no possibility the IRS would collect additional proceeds (future proceeds).

On January 31, 2017, petitioner submitted a response to the WBO arguing that collected proceeds should include tax of $180,460 from the 2011 wage issue and $603,012 for the unified credits used to offset the shareholders' gift tax. He also argued that his award should not be reduced because of the sequestration.

The WBO consulted with an IRS estate and gift tax attorney regarding the implications of the whistleblower information. The attorney advised that the collected proceeds should include the reduction in the wife's unified credit but not the husband's. He reasoned that the audit's treatment of the loans as dividends and gifts caused the shareholders to file the gift tax returns and use their credits. He reasoned that if they had not filed the gift tax returns, the wife would have had a larger credit available to offset her gift tax for 2015. Conversely, the attorney advised that the IRS would not collect any additional tax from the husband's use of his unified credit because his estate tax return had been filed and no estate tax was due. Finally, the attorney advised that petitioner's whistleblower claim did not need to be held open until the wife's death because no further gift or estate tax would be collected on the basis of the whistleblower information.

In a revised preliminary award recommendation letter dated April 3, 2017 (revised recommendation letter), the WBO notified petitioner that its award recommendation remained the same, $206,693, but it changed its position with respect to future proceeds. The WBO acknowledged the possibility that the IRS will collect future proceeds because the wife used part of her unified credit to offset her 2010 and 2011 gift tax and stated that petitioner is entitled to a 22% award on the future proceeds.[3] The revised recommendation letter restates the portion of the preliminary award recommendation letter relating to a 6.9% sequestration of petitioner's award.

On June 9, 2017, the WBO sent a letter to petitioner (final decision letter) stating that the WBO "has made a determination that you are entitled to an award of $206,693". The letter incorrectly identifies the award as discretionary under section 7623(a). Respondent concedes that petitioner is entitled to a mandatory award. The letter restates that the award is subject to sequestration. Petitioner timely filed a petition with this Court. He argues that the WBO abused its discretion on two grounds: (1) the amount of the collected proceeds, specifically whether collected proceeds should include the tax resulting from the corporation's

_____

[3]The wife made taxable gifts in 2015, used her remaining credit, and paid gift tax. Accordingly, respondent has collected these proceeds.

decision not to deduct son No. 1's wages for 2011 and the husband's used unified credit and (2) the sequestration of a portion of his whistleblower award.

## Discussion

Section 7623(a) authorizes the Secretary to pay awards to whistleblowers for detecting underpayments of tax. Awards under section 7623(a) are discretionary. We do not have jurisdiction to review discretionary awards. Section 7623(b) makes whistleblower awards mandatory if certain requirements are met and provides the Court with jurisdiction to review mandatory awards. There are two prerequisites for a mandatory award: (1) proceed with an administrative or judicial action on the basis of the whistleblower's information and (2) collect proceeds as a result of the action. See Cooper v. Commissioner (Cooper II), 136 T.C. 597, 600-601 (2011). In addition section 7623(b)(5) provides two monetary thresholds for a mandatory award: (1) in the case of an individual taxpayer, the target taxpayer's gross income must exceed $200,000 for any taxable year subject to the action, and (2) the proceeds in dispute must exceed $2 million. The $2 million threshold is not jurisdictional; rather, it is an affirmative defense to be pleaded by respondent. See Lippolis v. Commissioner, 143 T.C. 393 (2014). Respondent acknowledges that we have jurisdiction to review the WBO's determination of petitioner's whistleblower award, but he

argues that we do not have jurisdiction with respect to the sequestration of a portion of the award.

We review whistleblower award determinations for abuse of discretion. Kasper v. Commissioner (Kasper II), 150 T.C. 8, 21-23 (2018). Abuse of discretion occurs when a determination is arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). In ascertaining whether the WBO abused its discretion, we generally limit our review to the administrative record. Kasper II, 150 T.C. at 20. We look to the administrative record for an explanation of the basis for the WBO's determinations.

Section 7623(b)(1) provides parameters for determining the amount of the mandatory whistleblower award:

> If the Secretary proceeds with any administrative or judicial action * * * based on information brought to the Secretary's attention by an individual, such individual shall * * * receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action * * * (determined without regard to whether such proceeds are available to the Secretary). The determination of the amount of such award by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action.

Section 7623(c) defines "proceeds" as:

>   (1) penalties, interest, additions to tax, and additional amounts provided under the internal revenue laws, and

>   (2) any proceeds arising from laws for which the Internal Revenue Service is authorized to administer, enforce, or investigate, including--

>   (A) criminal fines and civil forfeitures, and

>   (B) violations of reporting requirements.

Congress amended section 7623 in 2018 to add a definition of "proceeds" in subsection (c).[4] See Bipartisan Budget Act of 2018 (2018 Budget Act), Pub. L. No. 115-123, sec. 41108(a), 132 Stat. at 158.  By including criminal fines and civil forfeitures in the definition of proceeds, Congress conformed the text of the statute to our holding in Whistleblower 21276-13W v. Commissioner, 147 T.C. 121 (2016), supplementing 144 T.C. 290 (2015).  The amendments apply to "information provided before, on, or after the date of the enactment of this Act with respect to which a final determination for an award has not been made before

---

[4]The Bipartisan Budget Act of 2018, Pub. L. No. 115-123, sec. 41108(a)(2), (b), 132 Stat. at 158-159, also amended sec. 7632(b)(1) to clarify that collected proceeds are "determined without regard to whether such proceeds are available to the Secretary" and to eliminate the reference that proceeds "includ[e] penalties, interest, additions to tax, and additional amounts".  Former sec. 7632(b)(1) applied the award percentage to "collected proceeds (including penalties, interest, additions to tax, and additional amounts)".

such date of enactment." 2018 Budget Act sec. 41108(d), 132 Stat. at 158-159.

We have not determined the effective date of the 2018 Budget Act amendments.

The parties disagree over the computation of collected proceeds, and petitioner

relies on the amendments. Accordingly, we do so herein.

I.      Effective Date of Amendments

Section 7623 does not refer to "a final determination for an award". It refers

to the WBO's authority to make determinations relating to the amount of a

whistleblower award under the parameters set forth in subsection (b)(1) through

(3). Subsection (b)(4) provides the whistleblower with the right to appeal "[a]ny

determination * * * under paragraph (1), (2), or (3)". Nor do the whistleblower

regulations refer to "a final determination for an award". The regulations refer to a

preliminary award recommendation letter, a detailed report, and a determination

letter. See secs. 301.7623-3(c), 301.7623-4(d)(1) and (2), Proced. & Admin. Regs.

The regulations further establish when a whistleblower award may be paid.

Under the regulations three events must occur before payment of a whistleblower

award: (1) there is a final determination of tax against the target, (2) the WBO

makes a determination of the award relating to that tax and communicates that

determination to the whistleblower in a determination letter, and (3) all appeals of

the WBO's determination are final or the whistleblower executes a consent form

agreeing to the WBO's determination and waiving his right to appeal it. Secs. 301.7623-3(c), 301.7623-4(d)(1) and (2), Proced. & Admin. Regs. Thus, the whistleblower regulations indicate that a final determination for a whistleblower award does not occur until the WBO's award determination may no longer be properly challenged in this Court or elsewhere. See sec. 301.7623-4(d)(1) and (2), Proced. & Admin. Regs.

The regulations further provide for an administrative proceeding for the whistleblower to challenge the WBO's award determination before a determination letter is issued. The WBO sends a preliminary award recommendation letter to the whistleblower who has 30 days from the date the letter is sent to respond. Sec. 301-7623-3(c)(1)-(3), Proced. & Admin. Regs. The preliminary award recommendation is not a determination letter appealable to this Court. Id. subpara. (1). After the whistleblower's participation in the administrative proceeding concludes and there is a final determination of tax, the WBO will determine the amount of the award and send a determination letter to the whistleblower "stating the amount of the award." Id. subpara. (6). If the whistleblower consents to the award amount and waives his right to appeal, no determination letter is necessary, and the WBO pays the award as promptly as circumstances permit. Id. Under the regulations the WBO's determination letter

is not "a final determination for an award" because the determination letter can be appealed to this Court.[5]

We consider it appropriate to construe the phrase "a final determination for an award" by reference to the meaning of a final determination of tax. We hold that for purposes of the effective date of the amendments, "a final determination for an award" does not occur until after the whistleblower award can no longer be further challenged in this Court or elsewhere. Accordingly, the 2018 amendments apply to whistleblower claims for which the WBO's determinations properly remain subject to further proceedings if commenced.

II.    Collected Proceeds

A.    Son No. 1's 2011 Compensation

We must determine whether the WBO abused its discretion when it excluded the tax proceeds resulting from the corporation's decision not to deduct wages for son No. 1 for 2011. The tax was reported and paid upon the filing of the corporation's 2011 return. We have held that collected proceeds do not include

---

[5]The WBO incorrectly labeled its letter to petitioner "final decision letter". The regulations use the term "decision letter" with respect to sec. 7623(a) discretionary awards. Respondent concedes that the WBO incorrectly designated petitioner's award as pursuant to sec. 7623(a), which the parties agree is a harmless error.

reported, paid tax when the target changes its reporting for a year after the year of an audit. Whistleblower 16158-14W v. Commissioner, 148 T.C. 303, 308 (2017). In that case we considered proceeds from a target's change in reporting for a future tax year that was not under audit at the time of the whistleblower award determination. We held that the WBO is not required to monitor the target for a change in future reporting. Id.

Petitioner seeks to distinguish Whistleblower 16158-14W. Respondent was auditing the corporation's 2010 tax return, and the corporation knew of the wage issue before it filed the 2011 return changing its reporting. Ultimately, respondent audited the 2011 return and denied an automobile expense deduction. On the basis of these facts petitioner argues that the corporation's change in reporting of the payments to son No. 1 was not voluntary because the IRS' action ensured compliance. Arguably, petitioner is correct; the target corporation's change in its reporting of the wages may have been the result of the IRS' action. The corporation was aware of respondent's position that the wage deductions were improper before it filed its 2011 return because of the ongoing audit for 2010. The whistleblower information likely contributed to the corporation's decision not to deduct the wages for 2011. However, the same can be said about the target's decision to change its reporting in Whistleblower 16158-14W. We held there that

reported, paid tax is not collected proceeds and see no need to narrow that holding in this case on the basis that an ongoing audit was expanded to include the year of the reported, paid tax. The regulations recognize that a whistleblower may cause a target to change its reporting for future years and identify such a change as a positive factor in determining the award percentage where the whistleblower information "had an impact on the behavior of the taxpayer, for example by causing the taxpayer to promptly correct a previously-reported improper position." Sec. 301.7623-4(b)(1)(viii), Proced. & Admin. Regs. The change in reporting affects the award percentage, not the amount of collected proceeds.[6]

B.     Husband's Unified Credit

Petitioner argues that the WBO abused its discretion by excluding the deceased husband's used unified credit from the collected proceeds. The IRS did not collect any gift tax from the husband or estate tax from his estate. The estate filed an estate tax return reporting no estate tax liability. The WBO determined that there is no possibility for future proceeds from the husband's estate because any events that could have triggered tax have already occurred and resulted in no tax. Petitioner asks that we consider, as part of the future proceeds, the tax on the

_____

[6]Petitioner did not argue that the WBO failed to consider this factor in determining the award percentage.

transfer of the trust assets to the husband's named beneficiaries on the termination of his wife's life estate. He argues that the husband merely deferred the payment of estate tax on his assets and any tax from the transfer of his assets to the beneficiaries is collected proceeds.

A tax allocation clause in the trust documents provides that any estate tax due on the transfer to the remainder beneficiaries will be paid out of the trust assets before the asset distribution to the beneficiaries. Similarly, section 2207A provides the surviving spouse's estate the right to recoup estate tax from the beneficiaries. Nevertheless, the trust assets remaining after the wife's life estate are included in her estate upon her death, and the resulting estate tax is the liability of her estate. See sec. 2044(a). The husband's estate will not owe any tax on the termination of the life estate and there is no possibility of collected proceeds from the husband's use of his unified credit. The WBO properly concluded that neither the deceased nor his estate owes additional gift or estate tax and that there will be no collect proceeds from the husband's use of the unified credit. The events that could have triggered any tax have already occurred and have resulted in no tax.

III.  Sequestration

Petitioner argues that the WBO abused its discretion by determining that his whistleblower award may be reduced on the basis of the sequestration in effect for

the year the award is paid. Sequestration is a measure by which Congress enforces mandatory spending cuts across most Government programs and agencies during the budgetary process. Sequestration applies to all nonexempt direct spending when Congress fails to enact certain budgetary legislation for the fiscal year.[7] Budget Control Act of 2011 (Budget Control Act), Pub. L. No. 112-25, secs. 101-103, 125 Stat. at 241-246, as amended by American Taxpayer Relief Act of 2012 (codified as amended at 2 U.S.C. sec. 901(a) (2012)), Pub. L. No. 112-240, sec. 901, 126 Stat. at 2370. The applicability of the sequestration and the sequestration percentage are determined on the basis of the Government fiscal year that the award is paid. The WBO informed petitioner that the sequestration would have resulted in a $15,319 reduction in his award if it had been paid during the Government's 2017 fiscal year, ended September 30, 2017. The Office of Management and Budget (OMB) calculates the sequestration percentage for each fiscal year following the procedures set forth in the statute. See 2 U.S.C. sec. 901a. We have not asserted our jurisdiction over a sequestration of a whistleblower award. Accordingly, we examine our jurisdiction now.

---

[7]Sequestration may also apply to discretionary spending when certain budgetary legislation is not enacted. It does not apply to discretionary spending for fiscal years 2020 and 2021. See Bipartisan Budget Act of 2019, Pub. L. No. 116-37, sec. 301, 133 Stat. at 1057. Sec. 7623(b) mandatory awards are direct spending.

A.     Jurisdiction To Review Sequestration

We are a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress.  Kasper v. Commissioner, 137 T.C. 37, 40 (2011); Judge v. Commissioner, 88 T.C. 1175, 1180-1181 (1987).  In determining our jurisdiction over a given matter, this Court and the Courts of Appeals have given our jurisdictional provisions a broad, practical construction rather than a narrow, technical one.  Lewy v. Commissioner, 68 T.C. 779, 781 (1977).  Section 7623(b)(4) confers on a whistleblower the right to appeal "[a]ny determination regarding an award * * * under paragraph (1), (2), or (3)" and confers on the Tax Court "jurisdiction with respect to such matter".[8]  Each enumerated paragraph refers to determinations made by the WBO concerning the amount of an award.

Paragraph (1) confers on the WBO the authority to determine the award percentage within a range of 15% to 30%; it states:  "The determination of the amount of such award by the Whistleblower Office" is based on the whistleblower's contributions to the IRS action.  Paragraphs (2) and (3) identify circumstances where the award percentage may be reduced below the 15% to 30% range.  Paragraph (2)(A) provides that where the WBO determines that the

_____

[8]Sec. 7623 also refers to actions by the Secretary, a broad term meaning "the Secretary of the Treasury or his delegate."  Sec. 7701(a)(11)(B) (defining the term "Secretary").

whistleblower made a less substantial contribution to the IRS action, the WBO may "award such sums as it considers appropriate" not to exceed 10% of collected proceeds. Paragraph (3) provides that if the WBO "determines that the * * * [whistleblower] planned and initiated the actions that led to the underpayment * * *, then the * * * [WBO] may appropriately reduce such award."

Section 7623(b)(4) grants the Court "jurisdiction with respect to" the WBO's determinations relating to the award. We have jurisdiction to review the WBO's award determination or denial thereof. Smith v. Commissioner, 148 T.C. 449, 454 (2017). However, section 7623(b)(4) does not grant us jurisdiction over decisions by the IRS in its conduct of audits or collection activities. We do not have authority under section 7623(b)(4) to review the Commissioner's determination of the target's tax liability. Cohen v. Commissioner, 139 T.C. 299, 302 (2012), aff'd per curiam, 550 F. App'x 10 (D.C. Cir. 2014). Nor do we have authority "to direct the Secretary to proceed with an administrative or judicial action." Cooper II, 136 T.C. at 600. Furthermore, we do not review the IRS' decision whether to audit a target in response to a whistleblower's claim, and we have no authority to require the IRS to explain a decision not to audit. Lacey v. Commissioner, 153 T.C. ___, ___ (slip op. at 30) (Nov. 25, 2019).

Respondent argues against our jurisdiction to review the determination that a whistleblower award is subject to sequestration. He argues that the WBO did not determine the sequestration percentage or determine that the sequestration applied to petitioner's whistleblower award.[9] Rather, he argues that the WBO merely followed guidance from the OMB that whistleblower awards are subject to sequestration.

Under section 7623(b)(4) we have jurisdiction to review the WBO's determinations of whistleblower awards. The sequestration of petitioner's award reduces the amount of the award. Our jurisdiction to review the WBO's award determinations includes jurisdiction to review whether the WBO considered an inappropriate factor in making its award determination. Petitioner argues that the sequestration is an inappropriate factor. While respondent argues that the WBO merely followed the OMB's guidance on the budget sequestration provisions, section 7623 confers on the WBO the sole statutory authority to determine whether a whistleblower is entitled to an award and, if so, the amount of the award. We are required to review the WBO's determinations, including whether it

---

[9]In fiscal year 2018 over $20 million was sequestered from IRS whistleblower awards. I.R.S. Whistleblower Program Fiscal Year 2018 Annual Report to Congress 8, www.irs.gov/pub/whistleblower/fy18_wo_annual_report_final.pdf.

properly exercised its discretion to follow any guidance given by the OMB and whether it appropriately applied the sequestration provisions. Accordingly, our jurisdiction under section 7623(b)(4) once invoked includes deciding whether the WBO properly applied the sequestration provisions to petitioner's whistleblower award.[10]

B.     Abuse of Discretion

Petitioner argues that the WBO abused its discretion because (1) the administrative record does not support the sequestration and (2) sequestration is not a permissible ground to reduce a whistleblower award under section 7623(b) and the accompanying regulations.[11] He argues that the administrative file relied on by the WBO analyst who recommended the 22% award does not contain any facts or law supporting the sequestration. However, the administrative record that

---

[10]The WBO issued to petitioner a written determination, and petitioner timely petitioned this Court with respect to that determination, invoking our jurisdiction under sec. 7623(b)(4). The effects of sequestration on petitioner's award are not yet final as the sequestration is determined on the basis of the year of payment. Issuance of an award check is a determination appealable to this Court. Whistleblower 4496-15W v. Commissioner, 148 T.C. 425, 430 (2017). However, in the interest of efficient judicial administration we decide the sequestration issue now.

[11]Petitioner argues that the sequestration violates the Takings Clause of the Fifth Amendment to the Constitution. Petitioner has not cited any legal authority that a sec. 7623 claim is private property. We find that this argument is without merit.

we review for abuse of discretion includes all correspondence and documents sent by the WBO to petitioner. See sec. 301.7623-3(e)(1), (2)(vi), Proced. & Admin. Regs. The preliminary award recommendation letter, the revised recommendation letter, and the final decision letter each notified petitioner that his award may be reduced for the sequestration. The preliminary award recommendation letter is the beginning of the whistleblower's administrative proceeding and is part of the administrative record that is currently before this Court. Support for the sequestration is not absent from the administrative record as petitioner argues. In fact petitioner objected to the sequestration as part of his administrative proceeding. Therefore, we find that the administrative record contains sufficient support for the sequestration and it is not arbitrary or capricious and has a basis in fact.

We consider petitioner's argument that sequestration is not a permissible reason to reduce a whistleblower award within the parameters set forth in section 7623(b) and the positive and negative factors listed in the regulations. The WBO made a determination appealable to this Court when it issued the final decision letter. See Cooper v. Commissioner, 135 T.C. 70, 75 (2010) (asserting jurisdiction under section 7623(b)(4) when the WBO issued a written notice that embodies a determination).

Section 301.7623-4(a), Proced. & Admin. Regs., provides that the WBO will

> (1) Analyze the claim by applying the rules provided in paragraph (c) of this section to the information contained in the administrative claim file to determine an award percentage; and

> (2) Multiply the award percentage by the amount of collected proceeds. * * *

Paragraph (b) provides a nonexclusive list of positive and negative factors for determining the award percentage. Paragraph (c) provides a computational framework for the WBO to analyze a claim. It directs the WBO to start its analysis at a 15% award and determine whether the whistleblower's claim merits an increase to 22% or 30% on the basis of the positive factors or a decrease to 15%, 18%, 22%, or 26% on the basis of the negative factors. Id. para. (b)(1)(ii).

The WBO's analyst recommended that petitioner receive a 22% award. She evaluated the statutory parameters for the award percentage and the positive and negative factors set out in the regulations. Petitioner does not argue that the analyst improperly applied these factors. Rather, he argues that the only permitted reductions to whistleblower awards are provided in section 7623 and the regulations. Section 301.7623-4(b), Proced. & Admin. Regs., specifically states that the list of factors is nonexclusive.

To determine whether the WBO abused its discretion, we must consider whether the sequestration has a sound basis in law. Respondent argues that mandatory whistleblower awards are direct spending authorized under section 7623(b). See 2 U.S.C. sec. 900(c)(8)(A) (2012) (defining direct spending as "budget authority provided by law other than appropriations Acts"). Petitioner argues that mandatory whistleblower awards are statutorily exempt from the sequestration of direct spending. IRS whistleblower awards are not specifically listed as exempt direct spending in the Budget Control Act. Where a statute explicitly provides exceptions to a general rule, it is presumed that the listed exceptions are the only exceptions Congress intended. Catterall v. Commissioner, 68 T.C. 413, 421 (1977), aff'd sub nom. Vorbleski v. Commissioner, 589 F.2d 123 (3d Cir. 1978). We rely on this rule of statutory construction to hold that IRS whistleblower awards are not exempt from sequestration.

Petitioner attempts to fit whistleblower awards within the exemption for nondefense unobligated balances of budget authority carried over from prior fiscal years. See 2 U.S.C. sec. 905(e) (2012) (exempting nondefense unobligated balances). Petitioner argues that whistleblower awards are self-funded through the targets' payment of their taxes. He characterized the targets' 2013 tax payments as the appropriation for his award and argues that the tax payments become

unobligated balances after 2013 until his award is paid. He further argues without citation of any legal authority that proceeds collected from a target are deposited into a special fund for the particular purpose of paying the whistleblower award. We find petitioner's argument unpersuasive.

Petitioner's argument misinterprets section 7623(b). Section 7623(a) requires that an award "shall be paid from the proceeds of amounts collected". We used the phrase "specific funding source" to describe collected proceeds for paying discretionary awards under section 7623(a). Whistleblower 21276-13W v. Commissioner, 147 T.C. at 135. Conversely, section 7623(b) uses collected proceeds only to calculate the amount of a mandatory award, not as the source of funding. Id. at 136-138. The source of payment of a mandatory award is not limited to collected proceeds. Id. Mandatory awards are not self-funded, as petitioner argues as a basic premise of his argument that whistleblower awards are exempt, unobligated balances. The WBO's budgetary authority to pay mandatory whistleblower awards is the authority granted by section 7623(b).

We find that the WBO's determination that petitioner's whistleblower award is subject to the sequestration in effect for the fiscal year that the award is paid is not arbitrary or capricious and has a sound basis in law. We disagree with petitioner's interpretation of the law. Congress mandated the sequestration of all

nonexempt, direct spending and did not specifically exempt IRS whistleblower awards. It is not an abuse of discretion to apply the sequestration when paying a whistleblower award. Nor is it an abuse of discretion to inform the whistleblower that sequestration in effect for the year of payment may apply on the basis of the sequestration. Accordingly, we hold that the WBO did not abuse its discretion.

## IV.    Conclusion

We hold that the WBO did not abuse its discretion in its determination of petitioner's award with respect to the wage deduction, the unified credit, or sequestration. In reaching our holding we have considered all arguments made, and to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order and decision will be entered.